UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**    5:26-cv-03098-BFM            **Date:**    June 15, 2026

**Title:**        *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

===============================================================

Present:    The Honorable <u>Brianna Fuller Mircheff, United States Magistrate Judge</u>

| <u>Christianna Howard</u> | <u>N/A</u> |
|:---:|:---:|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff | Attorneys Present for Defendant |
| N/A | N/A |

**Proceedings:**    **(In Chambers) Order Granting Petition (ECF 1)**

Petitioner Luis Angel Lopez-Cano filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on June 5, 2026. (ECF 1.) For the reasons stated below, the Petition is **granted**.

**I.    Factual Background**

Petitioner Luis Angel Lopez-Cano is a noncitizen who is currently detained at the Adelanto Detention Facility, within the Central District of California. (ECF 1 ("Pet.") at 2, 8.) He entered the United States in 2019 at the age of fourteen and was detained by ICE upon entry. (Pet. at 2.) He was placed into the Intensive Supervision Appearance Program (ISAP) and was subject to required check-ins. (Pet at 11.) Petitioner alleges that he generally complied with the conditions of his supervised release until May 29, 2026, when he was delayed in returning to his home to meet his officer for a 12:30 pm for an ICE check-in. (Pet at 11.) He presented himself in person at 1:30 pm on the same day at the Santa Ana Regional Office where he was given a warning and asked to return on June 1, 2026, but was told his actions did not constitute an ISAP violation. (Pet at 11.) On June 1, 2026, he presented himself again and was informed that everything was fine, he could go home, and that he should return

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03098-BFM                 **Date:**  June 15, 2026

**Title:**   *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

================================================================

June 2, 2026, at 8:00 am. (Pet. at 11-12.) When the Petitioner returned on time on June 2, 2026, he was detained without explanation and transferred to the Adelanto Detention Facility. (Pet. at 11-12.)

## II.    Analysis

Petitioner argues that his detention violates due process and asks for release. (Pet. at 16-28.) Respondents point to a notice of termination as the reason for the revocation, but do not substantively respond to Petitioner's due process argument. (*See* ECF 7 ("Answer").) Respondents' failure to respond to Petitioner's claim itself is a basis to grant the Petition. *See Soleimani v. Larose*, No.: 25-cv-3082-DMS-DEB, 2025 WL 3268412, *3 (S.D. Cal. 2025) (granting habeas petition where government's answer to the petition did not respond to all claims in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).

In any event, the Court finds Petitioner's claim meritorious, regardless of any forfeiture. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**   *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

==================================================================

interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

    1.    *Protected liberty interest*

On the first point, the Court finds that Petitioner has a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, he may have a protected liberty interest in remaining in the community—and an attendant right to procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and

Page **3** of **9**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03098-BFM                **Date:**   June 15, 2026

**Title:**       *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

======================================================================

requiring authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner was given humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) and was released pending adjudication of his asylum application. (ECF 7-2 at 1.) The grant of humanitarian parole under § 1182(d)(5)(A) was an implicit promise that Petitioner would be able to stay in the community until "the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). The purpose of parole in this case was to permit Petitioner to pursue his asylum claim—a purpose that has not yet been fulfilled. (ECF 7-1 at 3 (denial of asylum claim remains pending on appeal).) Petitioner relied on this promise, conditional as it was: he built a life in the United States. (Pet. at 11.) He is a student at Saddleback College and was employed before his detention. (Pet. at 12.) The Court thus concludes—as have many courts in this Circuit—that once Petitioner was released on humanitarian parole, he gained a protected liberty interest in remaining out of custody. *E.g.*, *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1163-64 (S.D. Cal. 2025) (arriving alien who was paroled into the United States on humanitarian parole has liberty interest in his continued release); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025); *Omer G. G. v. Kaiser*, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025); *see also Mohammadi v. Bondi*, No. C26-420-MLP, 2026 WL 607767, at *5 (W.D. Wash. Mar. 4, 2026) (collecting cases).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**      *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

========================================================================

   2.      *Process owed in connection with re-detention*

   Given that Petitioner has a protected liberty interest in his conditional release, the question is what process he is owed before the government would take that liberty interest away. Petitioner claims that due process required process *before* he was taken into custody. (Pet. at 16-19.) He thus argues that the appropriate habeas remedy is for him to be released back to the community. (Pet. at 14-15, 28.) The Court agrees.

   To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to process *before* she was re-detained.

   As to the first factor, and as set out in the prior section, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in his home, living with his family, working, attending college, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**    5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**     *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

======================================================================

maintaining his relationships in the community. *See Ortega*, 415 F. Supp. 3d at 970 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second *Mathews* factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) And where a petitioner has not received any custody hearing or other process in connection with the revocation of his parole, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

As noted above, Section 1182 provides that individuals released on humanitarian parole may be detained "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." 8 U.S.C. § 1182(d)(5)(A). That provision is an implicit promise that humanitarian parole will not be revoked unless the purposes of the parole have been served. *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-45 (D. Or. 2025). Respondents' own regulations align with that reading: they state that termination of humanitarian parole occurs when the purposes of parole have been accomplished or when, in the opinion of a defined group of officials, neither humanitarian reasons nor public benefit warrants his continued presence. 8 C.F.R. § 212.5(e)(2)(i). Once he was released, then, Petitioner had a liberty interest "in remaining at liberty unless [he] no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at *13 (E.D. Cal. Sept. 5, 2025) (cleaned up). In the case of humanitarian

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**     5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**       *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

==================================================================

parole, that means at least: "(1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination." *Velasquez-Chinga v. Noem*, No. 3:26-CV-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026).

Here, Petitioner was provided a notice of termination. (ECF 7-2.) But he was not provided initial notice of the allegations or an opportunity to rebut the reasons given for the termination, and whether they really made him a flight risk. Instead, the I-213 reflects that a final decision to terminate his parole was made after an ICE officer reviewed his ISAP history. (ECF 7-1 at 3-4.) Petitioner was not given the chance to explain, as he did in his Petition, that he was simply *late* arriving home to his home visit. (Pet. at 11.) Nor did he get the chance to try to persuade the decisionmaker that the instances where his monitor was not appropriately charged do not make him a flight risk, and neither does his one instance of tardiness—given that he immediately presented himself to the ISAP office that day, and the next two business days. (Pet. at 11.) It does not "necessarily follow" from the allegation of a violation "that Petitioner can be detained for those violations without a hearing. That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *E.A. T.B. v. Wamsley*, 795 F.Supp.3d 1316, 1322 (W.D. Wash. 2025).

Finally, Respondents have not articulated any countervailing government interest—the third and final *Mathews* factor—that supports depriving Petitioner of the right to be heard. Due process "usually" requires a hearing *before* the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**      *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

==================================================================

impossible to provide pre-deprivation process. *Id.* at 128. But neither of those exceptions appears to apply here. Respondents do not argue that quick action was necessary here. Indeed, while Respondents apparently detained Petitioner based on a missed check-in, Respondents saw no need to detain Petitioner when he reported himself or when he returned on June 1, 2026. (Pet. at 11). Instead, Respondents simply waited until Petitioner arrived, faithfully, for the third time in five days and have held him since, without providing him any right to respond to DHS's allegations. (Pet at 11-12.)

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by *no* opportunity to be heard—violates the Due Process Clause.

### III.   Appropriate Remedy

As has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position he would have been absent the due process violation—that is, he should be released from custody on the conditions that were initially imposed. *E.g.*, *E.A. T.-B.*, 795 F. Supp. at 1324 (granting such relief); *Jasbin v. Warden*, No. 26-CV-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**    5:26-cv-03098-BFM          **Date:**   June 15, 2026

**Title:**      *Luis Angel Lopez-Cano v. Markwayne Mullin et al.*

=====================================================================

petitioner was only entitled to bond hearing as *Maldonado Bautista* class member); *Prior v. Chestnut*, No. 1:25-CV-01131-JLT-EPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

**IV.    Conclusion**

Accordingly, the Petition (ECF 1) is granted. Petitioner (A# 216-575-544) is ordered to be released immediately and returned to the conditions of parole he was under before this most recent detention. Petitioner's counsel shall file a status report confirming Petitioner's release within three days of his release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court. Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

The remaining claims in the Petition are denied as moot in light of the relief granted on Claim One.

**IT IS SO ORDERED**

cc:    Counsel of Record

Initials of Preparer:      ch

Page **9** of **9**